A COMPLAINT UNDER THE CIVIL RIGHTS ACT,
42 U.S.C. § 1983

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

Robert Clark
_____
Plaintiff

611786
_____
Inmate Number

VERSUS

James LeBlanc
Mathew Gamble
Randy Lavespere
____ continued on attached page
(Enter above the full name of each
defendant in this action.)

§ Plaintiffs 1st Amended
§ Petition in Cause No.
§ 3:19-cv-00512-BAJ-RLB
§

Electronic Filing Pilot Program
In accordance with the Procedural Rules for Electronic Filing Pilot Project, General Order
2012-01, inmates who reside in or are transferred into Louisiana Department of Corrections facilities
participating in the Electronic Filing Pilot Program shall receive orders, notices and judgments by
Notice of Electronic Filing ("NEF").

Instructions for Filing Complaint by Prisoners
Under the Civil Rights Act, 42 U.S.C. § 1983.

The names of **all parties** must be listed in the caption and in part III of the complaint **exactly
the same**.

In order for this complaint to be filed, it must be accompanied by the filing fee of $400.00.
In addition, the United States Marshal will require you to pay the cost of serving the complaint on
each of the defendants.

If you are unable to pre-pay the filing fee and service costs, you may petition the court to
proceed in forma pauperis. You must sign the affidavit, and obtain the signature of an authorized
officer certifying the amount of money in your inmate account. If pauper status is granted, you will
be required to pay an initial partial filing fee and thereafter, prison officials shall be ordered to
forward monthly payments from your inmate account until the entire filing fee is paid.

P. 1

You will note that you are required to give facts. THIS COMPLAINT SHOULD NOT CONTAIN LEGAL ARGUMENTS OR CITATIONS. ALSO, <u>DO NOT INCLUDE EXHIBITS</u>.

Submit the complaint and pauper affidavit to the Clerk of the United States District Court for the Middle District of Louisiana, 777 Florida Street, Suite 139, Baton Rouge, La. 70801-1712.

I.    Previous Lawsuits

A. Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to your imprisonment?    Yes (✓)  No ( )

B. If your answer to A is yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

1. Parties to this previous lawsuit
   Plaintiff(s):  _Robert Clark_____

   Defendant(s): _James LeBlanc; Mathew Gamble; Randy Lavespere; Darrel Vannoy; Kristen Thomas; Bradely LaComb; continued on attached page_

2. Court (if federal court, name the district; if state court, name the parish):
   _U.S. District Court, Middle District of LA____

3. Docket number:  _17-CV-111-BAJ-EWD_____

4. Name of judge to whom case was assigned: _Brian A. Jackson_____

5. Disposition (for example: Was the case dismissed? Was it appealed? Is it still pending?):
   _Dismissed without prejudice for failure to complete grievance process_

6. Date of filing lawsuit: _February 22, 2017_____
7. Date of disposition: _March 29, 2018_____

C. Have you had any previously filed federal lawsuits or appeals, whether or not related to the issues raised in this complaint, dismissed by any federal court as frivolous, malicious, or for failure to state a claim for which relief can be granted?
   Yes (✓)    No ( )

P. 2

CONTINUED FROM PAGE 1

DEFENDANTS IN THIS ACTION:

Darrel Vannoy
Kristen Thomas
Bradely La Comb
(First Name Unknown) Rheams (a Colonel at La. State. Pen.)
(First Name Unknown) Jones (A Major at La. State Pen.)
Sherryl Coodie
(First Name Unknown) Rosso (A Lt. Colonel at La. State Pen.)
Cynthia Park
Jane Doe    (Unknown emergancy medical technition whom
              denied Plaintiff medical care, riddiculed Plaintiff,
              and made offensive remarks to Plaintiff for requesting care)
Jane Doe #1 (officiel(s) responsible for making policy and
              training staff pertaining to gender dysphoria)
Antonio Whittaker
Jeff Travis
Joseph F.G. Lamartinere
Tracy Falgout
(First Name Unknown) Tracey (La. State Pen. Social Worker)
L. Ducote    (A registered Nurse and Step1 respondant at La State Pen.)
Seth Smith
John Doe (Step2 respondant(s) who remanded Step1 back to Step1
              level without instructions on what to do and then ignored
              resubmission of Step 2)
All Defendants are being sued in his or her official and individual
capacity.                        p. 1.1

CONTINUED FROM PAGE 2

(First Name Unknown) Rheams ; (First Name Unknown) Jones; Sheryl Sheryl Casdie; (First Name Unknown) Russo; Cynthia Pack; John Doe ; John Doe #1; John Doe #2; John Doe #3; and John Doe #4

All lawsuits ever filed are listed on attached motion entitled "History of Previous Lawsuits."

If your answer is yes, list the civil action numbers and the disposition of each case. You must identify in which federal district or appellate court the action was brought.
~~Dismissed either period or see failure to exaust greivance process~~ 16-cv-466-JJB-RLB; dismissed for failure to state a claim in the U.S. District Court, middle District of Louisiana

II.    Place of present confinement: Louisiana State Prison, Angola, LA 70712

A. Is there a prisoner grievance procedure in this institution?
   Yes ( ✓ ) No ( )

B. Did you present the facts relating to your complaint in the state prisoner grievance procedure?
   Yes ( ✓ ) No ( )

C. If your answer is Yes:

1. Identify the administrative grievance procedure number(s) in which the claims raised in this complaint were addressed. ARP# LSP-2016-2396; ARP Filed on 8/26/16 which was unanswered; LSP-2018-0462; LSP-2018-2345; ARP's on 10/11/16 which was unanswered
2. What steps did you take? Step 1 and 2 except LSP-2019-0462 which was rejected ~~Step~~ as untimely

3. What was the result? Medical Treatment was denied, refused all other request or ignored ARP filing all together

D. If your answer is No, explain why not: _____

III.   Parties
(In Item A below, place your name in the first blank and place your present address in the second blank. Do the same for additional plaintiffs, if any.)

A. Name of plaintiff(s), Robert Clark
   Address La. State Pen.; 17544 Tunica Trace, Angola, LA 70712

In Item B below, place the full name of the defendant in the first blank, his official position in the second blank, and his place of employment in the third blank. Use Item C for the names, positions, and places of employment of any additional defendants.

P. 3

B. Defendant _James LeBlanc_____ is employed as
_Secretary_____ at _Department of Public_
_Safety and Corrections (DOC)_

C. Additional Defendants: _Mathew Gamble is employed as Psychiatrist at_
_Louisiana State Penitentiary (LSP); Randy Lavespere is employed as_
_Head Medical Doctor at R.E. Barrow Treatment Center in LSP;_
_____ Continued on Attached page_

IV.    Statement of Claim

State here as briefly as possible the facts of your case.  Describe how each defendant is
involved.  Include also the names of other persons involved, dates, and places.  **Do not given
any legal arguments or cite any cases or statutes.**  If you intend to allege a number of
related claims, number and set forth each claim in a separate paragraph.  (Use as much space
as you need.  Attach extra sheets if necessary.)

1. Plaintiff, Ms. Robert Clark, DOC # 611786, also known as Ms. Aniya DeRay Clark is a transgender woman with gender dysphoria.

2. Ms. Clark is an inmate housed in the Louisiana Department of Public Safety and Corrections (DOC). Specifically she resides at Louisiana's State Penitentiary (LSP).

3. Ms. Clark has a (75) seventy-five year prison sentence to be served without the possibility of probation, parole, or suspension of sentence. She arrived in DOC January of 2014 and has sought medical attention for gender dysphoria since her first six months at LSP.

Continued on Attached pages.

P. 4

CONTINUED FROM PAGE 4

**III** Parties (continued):

Defendant Darrel Vannoy is employed as Head Warden of Louisiana State Penitentiary (LSP);

Defendant Kristen Thomas is employed as Mental Health Director of LSP (and is believed to be the Mental Health Director for the State of Louisiana's Dept. of Public Safety and Corr. (DOC));

Defendant Bradely LeComb is employed as a Major at LSP;

Defendant (First Name Unknown) Rheams is employed as a Colonel at LSP;

Defendant (First Name Unknown) Jones is employed as a Lt. Colonel at LSP;

Defendant Sherryl Coodie is employed as Assistant Warden and Prea Coordinator of LSP;

Defendant (First Name Unknown) Rosso is employed as a Lt. Colonel at LSP;

Defendant Cynthia Park is employed as a medical practioner at LSP;

~~Defendant~~ Defendant Jone Doe is employed as an Emergancy Medical Technition at LSP;

Defendant Jane Doe #1 is employed as a policy maker, and/or staff trainer pertaining to Transgenders and/or gender dysphoria and is believed to be James LeBlanc, Darrel Vannoy, ~~████~~ Joseph F.G. Lamartiniere, and/or Tracy Falgout;

Defendant Antonio Whittaker is employed as Assistant Warden of LSP;

Defendant Jeff Travis is employed as DOC Chief of Operations at DOC;

Defendant Joseph F.G. Lamartiniere is employed as Deputy Warden and Unit Head of LSP;

Defendant Tracy Falgout is employed as Assistant Warden ~~████~~ over Medical and Mental Health Services;

Defendant (First Name Unknown) Tracy is employed as a social worker of LSP;

Page 4.1

## CONTINUED FROM PAGE 4

Defendant L. Ducote is employed as a Registered Nurse and a Step 1 Respondant at LSP
Defendant Seth Smith is employed as Chief of Operations at LSP.

Defendant John Doe is employed as a Step 2 ARP. Respondant at DOC.

All Defendonts are being sued in his or her official and/or individual capacity.

Page 4.2

CONTINUED FROM PAGE Ø 4

**IV**   STATEMENT OF CLAIM (continued):

4.   Over the following years Plaintiff periodically spoke with Defendant Dr. Mathew Gamble, and several social workers pertaining to prison adjustments, plaintiffs history of being raped, the way security and inmates react to plaintiffs feminality and how the plaintiff reacted to negative reactions, how she felt, and possible solutions when plaintiff did not know how to respond.

5.   Gender dysphoria is a medical condition in which an individuals gender identity and ... identification differ from the gender assigned at birth.

6.   Medical professionals agree that gender dysphoria is a serious medical condition requiring treatment conforming to the Standards of Care (SOC). The clinically accepted standards for the treatment of gender dysphoria are in the World Professional Association for Transgender Health's and is entitled the Standards of Care

7.   Despite associations with Defendant Gamble, various social workers and psychotic drugs, Plaintiff continues to struggle mentally with her appearance as a male as well as others whom constantly try to defiminize her.

8.   When the plaintiff arrived at DOC on January 21, 2014, and also when plaintiff arived at LSP security shaved her head and this hurted for months.

9. Plaintiff bryan to seek out affection to feel attractive and engaged in unprotected sex to feel wanted.

10. Plaintiff re-arched her eyebrows and attempted to re-grow her cranial hair. She made her own clothes so that she could appear and present herself as a female although these actions are against DOC and LSP policies.

11. Plaintiff also maintained groomed fingernails past her finger tips which is also against DOC and LSP policies.

12. Plaintiff refused and still refuses to answer to "Robert" and only acknowledged her adopted effeminate name - ie Aniya DeRoy Clark - or Offender Clark, or her nickname which is "Yella." Yet she still could not shake the morbid details of her own masculinity.

13. Plaintiff sought help via counseling. Social Workers would in passing every month or so refer Plaintiff to see defendant Gamble or at worse scold her for trying to live as a woman.

14. Plaintiff began to not be able to sleep and have migraine headaches constantly. Consequently, Defendant Gamble prescribed her sleeping medications.

15. Plaintiff began to fear to speak to security about taunting, unwanted sexual advances, threats, and harassments because she was told by defendant Rosso that she would have her protection concern list filled with inmates names and as a result plaintiff would only be able to live in administrative segregation (Ad. Seg.) or Protected Custody which are two security statuses in which an inmate is only allowed out of a single occupant cell for one hour a day.

Page 4.0.2

16. Plaintiffs life slowly became a horror and in Dec. of 2015 she attempted suicide after asking to be moved due to such threats of rape, taunting, and harrassments being ignored. She hung herself and had to be cut down. Her neck was bruised and she threw up blood for several days afterwards.

17. Less than a week after the suicide attempt, security attempted to place her back on the same tier and disciplined her for refusing to go. Callus security guards told plaintiff to "be a man." After explaining to social worker Ms. Morgan why plaintiff did not wish to be placed back in that invirounment, she attempted to help by contacting classification officer Darryl Lee. Mr. Lee placed an unknown offender in plaintiffs Protection Concern List: Mr. Christol Hennessy. He was not involved yet plaintiff could no longer live around him as a result. This gave credence to Defendant Rosso's threat.

18. Plaintiff filed a Health Care Request form, number 001677 requesting to see defendant Gamble and receive counseling on May 18, 2016, because she knew her life was in danger due to the way she would periodically suffer from spontanios episodes of anxiety and manic depression spurred by her gender dysphoria.

19. On June 8, 2016, plaintiff spoke with Defendant Gamble and he said he would speak to defendant Lavespere about placing plaintiff on hormone therapy. Defendant Gamble alleged he could not do it himself.

20. On June 9, 2016 Plaintiff wrote Defendant Lavespere and requested for him to schedule an appointment to have plaintiff placed on hormone therapy. He never responded.

page 4.0.3

21. On June 28, 2016, plaintiff wrote another Health Care Request form number 024516 requesting therapy and information on the effects of auto-castration, which is the surgical self-treatment of removing the testicals.

22. The Emergency Medical Technition (EMT) who interviewed plaintiff pertaining to it scolded plaintiff for trying to be a 'woman' and told her, "You're not a woman, and we are not going to treat you like one or make you one." She was real hateful and belligerent.

23. On July 22, 2016 plaintiff sought the help of social worker Ms. Stacy. Plaintiff explained to her how Defendant Gamble told plaintiff that this was sorta 'new ground' at LSP and essentially there was no forum to follow. Plaintiff was seeking help because Assistant Warden Booker had recently told plaintiff she could not wear home made make-up or alter her appearance to look effiminate. Plaintiff felt real low because just days prior she had been told by Assistant Warden Merxina that if she called a Colonel a 'fine motherfucker' then she would be allowed to go to general population. Yet, plaintiff had not been moved. Plaintiff felt less than a person. Like trash.

24. On July 26, 2016, Plaintiff again wrote Assistant Warden Menxina about the promise and was placed in general population on Aug. 1. 2016. Although this should have been a joyous moment, plaintiff felt cheap and embarrassed about the means of her accomplishment.

25. When plaintiff arrived in general population where inmates are housed in dormatories, plaintiff asked to be allowed to shower in private according to DOC Department

page 4.0.4

Regulation No. C-01-022§§6 (AA)(2)(h) - (3) and
16 (B). Plaintiff had previously requested such privacy
and was allowed such in cellblock enviornments. Defendant
Rheams told Plaintiff that the cameras in the shower and
toilet areas did not work. This was a lie. In fact the
cameras do work and not only are they constantly
watched in certian areas of the prison but a Security personell
of high rank also have a app on their personal phones
which allow them to view the footage and/or record it
even from home. The very man who installed the cameras
was fired for sexual assault on a offender(s).

26. On August 12, 2016 plaintiff again spoke with
social worker Ms. Stacey and asked to be placed in a
class - program or therapy for those suffering from gender
dysphoria. Prior to this date Defendant Gamble and all
social workers had told the plaintiff that she had to get
to "population" to attend such classes/programs or groups or
therapy. Yet, this was actually a stall tactic, and now that
Plaintiff was in general population, Ms Stacey revealed that
there is no such classes, groups, or therapy. She further directed
plaintiff to conform to the rules pertaining to effeminate
expressions. She did not appear malicious but simply indifferent
due to rules in place by security. She also alleged plaintiff
had to much time for hormone therapy.

27. Several times while in general population, plaintiff
was sent back to her living quarters to change into "loose
fitting" clothes. Once she was even denied to return to
the food line because she had allegedly "missed her oppritunity"

page 13 4.0.5

by wearing tight clothes.

28. On Aug. 15, 2016 plaintiff was placed in ad. seg. because Defendant Bradely La Combe observed plaintiff having sex in the shower on the cameras viewing the shower area.

29. Later that same day plaintiff learned that not only did the cameras in the shower work, but to plaintiffs horror, bets were made as to the contents of her genitalia, and virtually anyone could be brought into the room where the monitors are kept. Futher, Defendant Rheams, Defendant LaCombe, and Defendant Jones, and an inmate named Lacey Billiot all viewed the footage of plaintiff having sex for lewd, non-security related purposes. As though plaintiff starred in a pornographic movie. Also plaintiff learned that other inmates and security personell had been viewing her prior showers and bathroom breaks, as well as the sex scene. Plaintiff was mocked by security and inmates about her genitalia, sex positions, floor pallet while having sex, and other demeaning details of the video footages. Plaintiff constantly felt and feels violated by such actions.

30. Also in Ougust, 2016 plaintiff spoke with Defendant Bunch and she told plaintiff that the reason she was not receiving individualized and appropriate medical treatment or any treatment for gender dysphoria at all is because of security. She futher alleged that Defendant Gamble and Defendant Lavespere attempted to get security to allow plaintiff to take hormone therapy and other steps to alleviate symptoms of her gender dysphoria but security denied the request.

31. On Aug. 21, 2016 plaintiff filed an Administrative Remedy Procedure (ARP) complaint pertaining to voyerism.

32. On Aug. 23, 2016 plaintiff filed an emergency ARP pertaining to her being denied individulized and oppropriate medical care.

33. On Aug. 28, 2016 plaintiff wrote LSP medical director Ms Kristen Thomas and included a copy of the ARP's asking for help. Defendant Thomas spoke with plaintiff the following week personally and assured her both ARPs were filed, and on the record. She alleged she could do no more and directed plaintiff Assistant Warden Coodie who is over PREA claims and situations.

34. On Sept. 2, 2016 plaintiff received notice that her complaint had been received and was being processed as case number LSP-2016-2396. Plaintiff never received any formal response to the Aug. 23, 2016 ARP.

35. On Sept. 15, 2016 plaintiff was awakened at 1:30 am and placed in shuckles, and handcuffs then led outside to the front of the Ad. Seg. building entrance where Defendant Rheams awaited. Defendant Rheams then told plaintiff, "You know I'm a dirty mother fucker. You got two choices. Either drop the ARP or I'll fuck over you right now." As plaintiff signed the ARP withdrawl form she was warned never to put his name in another ARP. He returned the next night to get a thumb print and re-iterate his threat. Plaintiff was petrified.

36. Plaintiff didn't know what to do so over the next couple of days she sought advise. Plaintiff spoke with Sgt. Holmes who took the situation seriously and took plaintiff to

page 4.0.7

Case 3:19-cv-00512-BAJ-SDJ  Document 7  09/16/19  Page 16 of 30

Defendant Rosso whom told Plaintiff to write Defendant Coodie and refile the ARP. So plaintiff did on Sept. 27, 2016.

37. On Sept. 27, 2016 plaintiff wrote Defendant Coodie and notified her of the actions of Defendant Rheams, the lack of sensitivity given to plaintiffs PREA complaint and its investigation, plaintiffs letters and conversation with Defendant Thomas, how plaintiff felt she was getting the run around and was receiving no treatment at all for gender dysphoria. Plaintiff was having trouble showering in private, she was being harrassed by security due to her exercising her right to shower in private, how ~~Sept 4~~ Dept. Reg. C-01-022 was/is being misconstrued or misused pertaining to consensual sex acts between inmates and the resulting protection concern list inactments of those found guilty of consensual sex acts, and that the plaintiff did not want to drop or withdraw ARP # LSP-2016-2396. Also that plaintiff did not receive a response to her ARP filed on Aug 23, 2016. Copies of the ARP's were enclosed in the letter.

38. On October 11, 2016 Plaintiff wrote the Chief of Operations for "DOC" and submitted a copy of two new ARP's. One complaining of voyerism and retaliation and another pertaining to not getting a response to the Aug. 23, 2016 ARP. A copy of both the ~~first and~~ Aug. 21, 2016 and Aug 23, 2016 ARPs were included. Plaintiff also mailed an original copy to the warden at LSP Defendant Vannoy. No response was ever given.

39. On October 18, 2016 plaintiff spoke with Defendant Gamble and during this session Dr Gamble stopped

page 4.0.8

and called Defendant &Lavespere and told him that he
(Defendant Gamble) believed Plaintiff was a "prime canidate"
for hormone therapy. Defendant Gamble went on to tell Dr.
Lavespere that he was referring the plaintiff to him for the
purpose of perscribing said hormone treatment.

40. After the call, Defendant Gamble told plaintiff to
look at his diagnosis written in her medical record officially
diagnosing plaintiff with gender dysphoria. Defendant Gamble alleged
he had not done so before because he had to speak to his priest
about the plaintiff and the moral decisions his job required him
to make at times. Defendant Gamble alleged he had not diagnosed
Plaintiff prior to that date due to moral religious reasons.

41. During the Oct. 18,2016 visit with Defendant Gamble
plaintiff reiterated her need for medical help and expend
expressed trouble sleeping as well as other ailments from her
condition. Defendant Gamble perscribed more sleeping medications
and reiterated securities stance on plaintiff presenting herself as
a female.

42. Defendant Gamble notified plaintiff that he could
not/would not perscribe necessary treatments also because it
would not only effect the plaintiff. He alleged that what he
does for the plaintiff he would have to do for those in prison at
large. He alleged there was no president or policy which would
allow him to perscribe plaintiff treatments in accordance to
the Standards of Care and not open the flood gates for others
in my p condition.

43. Policy and practice is therefore a factor in
plaintiffs denial of treatment.

Page ~~10~~ 4.0.9

44. On Nov. 1, 2016 plaintiff made a confidential PREA claim in the presence of Colonel Nettles in the presence of Defendant Rosso notifying him of an attempted rape. Colonel Nettles told Defendant Rosso to have plaintiff taken to the hospital immediately. Defendant Rosso took plaintiff to an escorting security guard who took plaintiff to a holding cell in the hospital. After 5:00 pm Sgt Baldwin told plaintiff she had personally spoke with investigative services but since they had all left plaintiff was then returned to her living quarters without seeing anyone about the attempted rape. This left a since of rage and hopelessness in the plaintiff.

45. Defendant Rosso held disciplinary court on Nov. 2, 2016. Despite his knowledge of the incident he offered plaintiff a plea bargian agreement insinuating a guilty verdict otherwise. When asked of the results at the hospital visit plaintiff told Defendant Rosso what happened and he disregaurded such Knowledge, found plaintiff guilty of fighting (that is fighting off her attacker who was trying to rape her), and punished her when he knew plaintiff was actually a victom.

46. On Nov. 13, 2016 plaintiff wrote Defendant Gamble notifying him plaintiff still had not seen Defendant Lavespere and was not scheduled to see him. Plaintiff also asked to see him about the PREA allegation.

47. On Nov. 14, 2016 plaintiff wrote Defendant Lavespere requesting to see him about back pain and gender dysphoria.

48. On Nov. 28, 2016 plaintiff spoke with Defendant Park and reiterated her request for hormone therapy, access to a razor, electrolysis, allowing plaintiff to live as a female,

Page ▓▓▓ 4.0.10

and express herself as a female via grooming such as being allowed to grow her hair past shoulder length, style her hair in effeminate styles (such as ponytails, braids, plaits, use rubber bands, pony tail ties, perms, etc), arch her eyebrows, grow finger nails past finger tips, wear stud earrings, dress in an effeminate manner, be addressed by her female name (ie ~~Regina~~ Aniya DeRay Clark) and female pronouns, and not be forced to expose her breast and/or ~~and~~ genital areas absent exigent circumstances. Plaintiff further requested for her to have security remove the cameras from the shower and restroom areas in the dormitories and ensure plaintiff has access to an outhouse or private restroom area in her work environment. Last, Plaintiff told Defendant Park of her PREA allegation and asked that it along with her voyerism, retaliation, and medical treatment complaints be investigated in a confidential manner.

49. Defendant Park was notified of plaintiffs physical and psychological harms including but not limited to the continual desire to harm herself, commit suicide, auto-castrate herself, adopt several personalities, use drugs, and auto-penectomy. Defendant Park was also notified of plaintiffs continued and worsening depression, anxiety attacks, suicide ideations, and physical male characteristics returning including but not limited to her voice deepening, her skin hardening, her breast shrunk and loss sensibility, her hair began re-thickening and grow in spots it had stopped such as face, chest, and leg areas. Defendant Park was notified of muscle spasms, nightmares, hot flashes, embarrassing spontaneous erections, weight loss, hemorrhoids, diarrhea, fatigue, vomiting, moments of grandosity, and feelings of helplessness all associated

page ~~2019~~ 4.0.11

with plaintiffs lack of ~~treatment~~ medical treatment. Defendant Parks notified plaintiff that Defendants Gamble, Laurspere, Vannoy, Coodie, Thomas, herself and others all know of plaintiffs complications from gender dysphoria but security considered plaintiffs request as a threat to security and she also appeared hostile because of plaintiff persistant pursuit of medical treatment. Defendant Parks that same day (Nov. 28, 2016) stripped plaintiff of all work restrictions even before a back X-Ray was completed due to complaints of lower back pain and despite plaintiff having two surgeries on her right hand and all prior doctors placing lifting restrictions on it permanently.

50. Defendant Parks actions were not professional but sadistic and malicious while guised under the color of law and medical practice. Plaintiffs actual hurts and pains- mentally and physically - were disregaurded due to Defendant Parks personal feelings towards homosexuality and she denied plaintiff medical treatment because of it.

51. On Nov. 30, 2016 Plaintiff was X-Rayed for back pain injuries, but plaintiff had already been stripped of work restrictions and placed on an ineffective medication regimine intentionally by Defendant Parks. The X-Ray was an attempt to cover up and justify Defendant Parks actions but in reality Defendant Park had already 'treated' (allegedly) plaintiff without looking at X-Rays.

52. Plaintiff constantly feels distraught, helpless, alone, and the need to live with several personalities. At times she feels self destructive, and acts out negatively, or turns to drugs.

page ~~00000~~ 4.0.12

53. There is no policy or training of correctional officers or any guidence for officials to react to plaintiffs needs medical needs and instead of seeking to remedy this they are seeking to delay, discourage, obstruct investigations, obstruct medical needs, and pursue a blanket policy and/or practice to deny medical treatment for gender dysphoria.

54. There is not a medical person known to plaintiff who has any significant experiance or experts in this field of study at LSP or DOC and the lack of treatment is serious and life threatening and poses a significant risk of serious and irreparable harm.

55. Plaintiff again spoke with Defendant Gamble on Jan. 6, 2017 and reiterated her need for medical intervention as well as all physical and mental injuries alleged herein and was told that a video confrence had been held by Defendants Gamble, Lavespere, Coodie, Thomas, and others and the conclusion was absent a federal court order, no changes would be made pertaining to the treatment treatment(s) of inmates with gender dysphoria. That is there would be no treatments at all.

56. Plaintiff has suffered from gender dysphoria since child hood and has notified all defendants of this. This is not something that will go away. On January 26, 2017 plaintiff again had a suicide attempt. In early Feb. of 2017 plaintiff filed a law suit against the prior mentioned defendants and in October, 2017 DOC made a policy pertaining to transgenders and those with gender dysphoria but never put it into practice.

57. In early March of 2018 plaintiffs lawsuit was dismissed without prejudice. In Oct. of 2018 plaintiff

page 4. 0. 13

tried to cut her testicals out which resulted in several stitches. That month she also filed Step 2 ARPs to the ones mentioned herein and also filed a new step 1 ARP pertaining to being denied medical treatment still for gender dysphoria. The step 2 ARPs were never responded to. The step 1 response alleged plaintiff is a male in a male institution and would be treated as such. Futher, only psychiatric counseling and meds would be the continued treatment for plaintiffs diagnosis. These are not treatments for gender dysphoria at all. Their treatments for the symptoms of gender dysphoria. For example... if a person has a headache so bad it causes that person to grind his or her teeth. You should not give that person a mouth piece. Thats treating the symptom of the headache. Not the headache itself. — That is what is going on here.

58. Again in May of 2019 plaintiff attempted suicide resulting in several staples being placed in her arm.

59. The Step 2 response for the last ARP was a remand back to the step 1 personell acknowledging the treatment is not adequate. No treatment was ever given nor was any aknowledgement of the remand so plaintiff again filed a Step 2 and never got another response. Plaintiff now again petitions this court for help.

# CLAIMS

1. All Defendants are being sued for denying Plaintiff her United States (U.S.) Constitutional (Const.) Right to be free from cruel and unusual punishment whereas each Defendants ~~action were~~ actions or inactions constituted a result that denied Plaintiff living conditions that do not fall below a U.S. Const. standard;

2. James LeBlanc and Dorsel Vannoy denied and is denying Plaintiff her Eighth (8th) Amendment (Amend.) U.S. Const. right to be free from cruel and unusual punishment by failing to impliment policy and train subordinates pertaining to said policy on how to treat, intract, and respond to transexuals and offenders with gender dysphoria;

3. Mathew Gamble, Randy Lavespere, Kristen Thomas, Sherryl Coodie, Dorsel Vannoy, ? Rosso, Cynthia Park, ? Rheams, ? Tracey, James LeBlanc, Jeff Travis, Joseph F.G. Lamartinere, Tracy Falgout, L. Ducote, Antonio Whittaker, Seth Smith, Jane Doe, Jane Doe #1, ~~and~~ John Doe, ~~and~~ and Bradley La Combe, denied plaintiff her 8th Amenda U.S. Const. right to be free from cruel and unusual punishment by denying plaintiff adequate medical treatment for her gender dysphoria and/or hindering said treatment, or worsening plaintiffs condition(s) of confinement to a point which would fall below U.S. Const. standards by actions or inactions alleged herein;

4. Bradely La Comb, ? Rheams, ? Jones are each being sued for denying plaintiff her 8th Amend. U.S. Const. right to be free from cruel and unusual punishment whereas each

page 4.0.15

recorded, viewed, and allowed others to see video footage
of plaintiff naked, showering, using the toilet, and having
sex for non-security reasons but instead for lewd, sexual
gratification;

5. Jane Doe #1 is being sued for denying plaintiff her
8th Amend. U.S. Const. right to be free from cruel and unusual
punishment by failing to make policy and training staff pertaining
to gender dysphoria. The policy currently made in Oct. 2017 is
not in practice and therefore moot.

6. Darrel Vonncy is being sued for having cameras in
the toilet and shower areas in the dormatories at LSP and
also having apps on security's personell phones in which they
can view footage at any time in violation of plaintiffs right
to be free from cruel and unusual punishment under the 8th Amend.
of the U.S. Const.;

7. James LeBlanc, Sherryl Coodie, Darrel Vonnay, Antonio
Whittaker, ? Tracy, Mathew Gamble, Randy Lovespere,
Jeff Travis, Joseph Lamartinere, and Seth Smith are all
being sued for denying plaintiff her 8th Amend. U.S. Const.
right to be free from cruel and unusual punishment by failing
to protect plaintiff from sexual assault, (ie voyerism) forcing
plaintiff to shower and use toilet while being video recorded,
and futher refused to allow plaintiff to use a portable curtion
while using the toilet thereby forcing plaintiff to expose herself
to cameras and inmates also using the toilet or shower area.
Said defendants also failed to protect plaintiff from a
substantial risk of sexual assault and failed to protect
plaintiff from self harm and/or a substantial risk of self harm;

page 4.0.16

8. Seth Smith is being sued for enacting Offender Posted Policy # 11 which discriminates against transgenders and their right to express their gender preference in violation of plaintiff 8th Amendment U.S. Const. right to be free from cruel and unusual punishment;

9. James LeBlanc ~~warden~~ and Darrel Vannoy are being sued for violating plaintiffs right to be free from cruel and unusual punishment under the 8th Amend. of the U.S. Const. by denying plaintiff ~~and~~ the right to have the same commissary items allowed females and grooming standards.

10. All defendants were deliberately indifferent to plaintiffs serious medical needs by denying her medically necessary treatment for her gender dysphoria in violation of her 8th Amend. U.S. Const. right to be free from cruel and unusual punishment.

All defendants are being sued in their individual and/or official capacity. Plaintiff is a layman and untrained in the law and ask this court to therefore be understanding as she tries to relay her allegations.

page 4.0.17

CONTINUED FROM PAGE 5

## Ⅴ. RELIEF (continued):

2. Plaintiff request cameras to be removed from the shower and bathroom areas;

3. Plaintiff request Defendants be enjoined and ordered to not force plaintiff to expose her breast and/or genital areas to other inmates absent exigent circumstances;

4. Plaintiff request the Defendant be enjoined in establishing policy and training subordinates pertaining to said policy on how to investigate and pursue PREA allegations in a confidential manner;

5. Plaintiff request Defendants be ordered to stop retaliation efforts and attempts to hinder legal redress;

6. Plaintiff request hormone therapy;

7. Plaintiff request to be allowed to express her female gender through grooming, clothing, and female pronoun use;

8. Plaintiff request electrolysis on her face, chest, and legs and to be allowed use of razor or shaving powder untill its complete;

9. Plaintiff request access to effeminate commissary products sold to females in DOC solely due to their gender, such as but not limited to pony tail ties, pony tail holders, hair caps, pink lotion, sanitary pads, lip stick, eye liner, ect.;

10. Plaintiff request to be examined by a qualified specialist with experiance in treating gender dysphoria patients;

11. Plaintiff request compensation for any legal fees accrued in the pursuit of this legal action;

page 5.0.1

V.    Relief

State briefly exactly what you want the court to do for you.  Make no legal arguments.  Cite

no cases or statutes.  Attach no exhibits. *Plaintiff request Defendants be enjoined from enforcing unconstitutional policies and/or practices that serve as a moving force behind Defendants constitutional violations which deny individuals with gender dysphoria individualized medically appropriate treatment.*

continued on attached pages

VI.   Plaintiff's Declaration

1.  I understand that I am prohibited from bringing a civil action in forma pauperis if, while I was incarcerated or detained in any facility, I have brought three or more civil actions or appeals in a court of the United States that were dismissed on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief may be granted, unless I am in imminent danger of serious physical injury.

2.  I understand that even if I am allowed to proceed in forma pauperis, I am responsible for paying the entire filing fee and any costs assessed by the Court, which, after payment of the partial initial filing fee, shall be deducted from my inmate account by my custodian in installment payments as prescribed by law.

3.  I understand that if I am released or transferred, it is my responsibility to keep the Court informed of my whereabouts and failure to do so may result in this action being dismissed with prejudice.

4.  I consent to receive orders, notices and judgments by Notice of Electronic Filing.

Signed this __12__ day of __September__, 20_19_.

_____

Signature of plaintiff(s)

P. 5

12. Plaintiff request compensation for mental and physical injuries alleged herein;

13. Plaintiff request punitive damages against each Defendant herein for his or her actions and/or inactions alleged herein;

14. Plantiff request/demands a jury trial.

p 5.0.2

referred to Honorable Judge B. J. Ellington

Disposition: Out of Court settlement
Date of filing: January 5, 2004
Date of Disposition: October 12, 2006

3. Parties: Plaintiff: Robert Clark
                    Versus
              Defendant: James LeBlanc etal.
Court: U.S. Dist. Court, Middle Dist. of Louisiana
Docket: 16-cv-466
Judge: Richard L Bourgeois, Jr.
Disposition: Dismiss for failure to state a claim
Date of filing: July 13 2016
Date of Disposition: January 12, 2018

4. Parties: (Plaintiff) Robert Clark
                    Versus
              (Defendant) James LeBlanc et. al.
Court: U.S. ~~District~~ Dist. Court, Middle Dist. of Louisiana
Docket: 17-cv-111
Judge: Honorable Brian A. Jackson
Disposition: Dismissed without prejudice
Date of filing: February 22, 2017
Date of Disposition: March 29, 2018

Respectfully Submitted
Ms. Robert Clark

page 2

## DECLARATION/SERVICE

I, Robert Clark, pro se, Plaintiff in the above and foregoing History of Previous Lawsuits do hereby swear under penalty of perjury the above and foregoing is true and correct and has been mailed to the US Dist. Court for the Middle Dist. of LA on this 12TH day of September 2019, electronically, by placing said in the US mail addressed to Legal programs. Signed

Ms Robert Clark
Doc #611786
(General Delivery)
La State Pen.
17544 Tunica Trace
Angola, LA 70712

Page 3