**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **ROBERT CLARK** | * | **CIVIL ACTION** |
| | * | |
| | * | **NO.:  3:19-cv-00512-BAJ-RLB** |
| | * | |
| **VERSUS** | * | **JUDGE BRIAN A. JACKSON** |
| | * | |
| | * | **MAGISTRATE JUDGE** |
| **JAMES LEBLANC, ET AL.** | * | **RICHARD L. BOURGEOIS** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## RESPONSE TO PLAINTIFF'S REQUEST FOR
## PRELIMINARY INJUNCTION

NOW INTO COURT, through undersigned counsel, comes James Leblanc and Warden Vannoy, who make this limited appearance and file this response to plaintiff's request for preliminary injunction.

Plaintiff, a transgender inmate housed at Angola, filed this instant suit on August 7, 2019. R.Doc. 1. To date, no defendant has been served with the complaint. On the same day suit was filed, plaintiff filed a temporary restraining order and preliminary injunction. R.Doc. 2. On September 26, 2019, plaintiff filed a request for an emergency temporary restraining order seeking an order regarding the grooming policy at Angola. R.Doc. 10. On October 10, 2019, the Court granted the temporary restraining order, ordering that plaintiff's hair shall not be cut during the pendency of the order, and set a hearing for October 22, 2019 regarding whether the TRO should be converted into a preliminary injunction. R.Doc. 11. Counsel for DOC attended the hearing, and this Court ordered for DOC to provide a response to the request for a preliminary injunction by October 31, 2019. Defendants make this limited appearance in compliance with this Court's order, and reserve the right to present all pertinent defenses in responsive pleadings after service is perfected.

1

Plaintiff seeks a preliminary injunction for the following: (1) ordering defendants to provide hormone therapy, and express female gender through grooming; (2) ordering defendants to provide female canteen products; (3) ordering defendants to remove cameras from LSP dormitory showers; (4) only allow female staff to strip search plaintiff; (5) investigate PREA violation allegations; and (6) not retaliate against plaintiff.

Plaintiff's request for a preliminary injunction should be denied. Only a qualified endocrinologist can determine whether hormone therapy is appropriate for a patient, given the wide range of potential serious side effects.   Defendants are in the process of finalizing a contract with a qualified endocrinologist to see plaintiff and evaluate whether hormone therapy is appropriate for plaintiff. Defendants will ensure that plaintiff receives the treatment that the endocrinologist recommends. Requiring defendants to provide a treatment that has not been recommended by a qualified physician at this time runs afoul of the deliberate indifference standard. Regarding the other requests, plaintiff failed to meet the burden of proof required to obtain a preliminary injunction, and the requests should be denied.

## I.    Preliminary Injunction

In order to obtain a preliminary injunction, plaintiff must show all of the following: (1) a substantial likelihood exists that plaintiff will succeed on the merits of the claim; (2) a substantial threat of irreparable harm exists if the injunction is not granted; (3) the threatened injury outweighs any harm to the defendants if the injunction is granted; and (4) the injunction will not undermine the public interest. See *Valley v. Rapides Parish School Board*, 118 F.3d 1047, 1051 (5th Cir. 1997). "[A] preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements."  Lake *Charles Diesel, Inc. v. General Motors Corp.*, 328 F.3d 192, 196 (5th Cir. 2003). Further, a

plaintiff seeking injunctive relief "must satisfy the court that relief is needed." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). To meet this standard, a plaintiff must demonstrate "that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Id.* at 633. If no such relief is needed, the request for an injunction is moot.

## II.    Injunction Requests

### 1.    Request for hormone therapy and grooming

#### A.  Hormone therapy

DOC Health Care Policy No. 47, which was revised in March 2019, governs treatment for inmates diagnosed with gender dysphoria, and provides that a treatment plan will be formulated to meet the standard of care. DOC has around 40 transgender inmates in its custody across all facilities. DOC has a team that assesses each transgender inmate and their treatment plan quarterly. Due to numerous requests for hormone therapy, DOC began to explore options to contract with an outside specialist. Hormone therapy has potential serious side effects, which include stroke, blood clots, brain tumors and cancer. Thus, a qualified specialist is required to determine whether hormone therapy is appropriate. Many of the physicians at each institution are not qualified to provide hormone therapy, nor provide the appropriate follow-up care.

Even before this suit was filed, DOC began searching for an outside physician to evaluate transgender inmates across all facilities. In July 2019, DOC met with Dr. Warren Fraser, who eventually agreed to evaluate transgender inmates in DOC custody. Since July, DOC has been working to prepare and finalize the contract with Dr. Fraser. As of the date of this filing, DOC is awaiting Dr. Fraser to complete his vendor profile so that the contract can be sent to the Office of

State Procurement for final approval. DOC anticipates the contract being finalized by the end of 2019.

Regarding the instant matter, plaintiff was admittedly treated for gender dysphoria through counseling from 2016 through present. Once plaintiff's mental health provider at Angola, Dr. Gamble, recommended plaintiff be evaluated for hormone therapy, Dr. Lavespere began taking steps to provide that treatment. As recognized in the *Standards of Care for Health of Transsexual, Transgender and Gender Nonconforming People* cited by plaintiff, a "specialized provider" is required to provide hormone therapy.  R.Doc. 3-5, p. 29. Because neither Dr. Lavespere, nor any other Angola physicians, are trained in hormone therapy for transgender patients, defendants are awaiting Dr. Fraser's contract to be finalized before plaintiff can be evaluated for hormone therapy. If or when Dr. Fraser recommends hormone therapy, defendants will authorize the recommended treatment.

Plaintiff's request for an injunction ordering defendants to provide hormone therapy should be denied. It is well settled that "the question of whether ... additional ... forms of treatment is indicated is a classic example of a matter for medical judgment." *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). Generally, such matters of professional medical judgment are better left to the expertise of medical professionals rather than to the legal expertise of judges. Federal courts are therefore loath to second-guess such medical decisions in federal civil rights actions. *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir.1976). At this time, no qualified physician has recommended hormone therapy treatment or made a determination that the treatment is medically necessary or appropriate for this particular inmate. Defendants are working diligently to finalize the contract with Dr. Fraser to have plaintiff evaluated. However, ordering defendants to provide

a specific treatment that has not been recommended by a qualified physician at this time is improper under a deliberate indifference standard.

### B. Grooming

Defendants will maintain the status quo in accordance with R.Doc. 11. However, given that plaintiff will treat with the endocrinologist, defendants aver that plaintiff has not shown that the requested grooming falls within the "standard of care" set forth in the motion.  Thus, the request for a preliminary injunction should be denied.

### 2. Female Canteen Purchases

Plaintiff's request to purchase female canteen items is vague and therefore defendants cannot assess this request. Plaintiff has not identified what types of "female canteen items" are requested. Therefore, the Court cannot assess whether a substantial threat of harm exists, whether defendants will have to make available specific canteen items only for plaintiff, what monetary costs will be incurred and whether the request affects public interests. As such, the preliminary injunction should be denied. In the alternative, defendants request a hearing to address specific items requested.

### 3. Removing Cameras from Shower Areas in LSP dormitories

Plaintiff is now housed in Close Cell Restriction unit (CCR) as a result of plaintiff's deadly altercation with another inmate.  Thus, plaintiff no longer showers in the LSP dormitories, and uses the individual shower in the CCR unit. As such, plaintiff's request for an injunction is moot.

### 4. Only allow female staff to strip search plaintiff

Plaintiff has not shown that a threat of irreparable harm exists if plaintiff is searched by male staff. HC Policy 47 does not provide that female staff shall search a transgender inmate. No evidence was presented with plaintiff's motion regarding searches by male staff. Therefore, the

Court cannot assess whether a substantial threat of harm exists, whether defendants will suffer harm by making female staff available any time plaintiff is to be searched, what monetary costs will be incurred and whether the request affects public interests, including the security issues that arise from this request. As such, the preliminary injunction should be denied. In the alternative, defendants request a hearing to present evidence as to the issues that would arise in requiring female staff to search plaintiff.

### 5. Retaliation

Plaintiff has submitted no evidence to support an injunction against retaliation. Defendants have not, and will not, retaliate against plaintiff for seeking legal redress. As such, this request should be denied.

### III.   Conclusion

Defendants are diligently working to contract with an outside endocrinologist to evaluate plaintiff for hormone therapy. Once the contract is approved, defendants will schedule an appointment with Dr. Fraser. Regarding plaintiff's other requests, defendants submit that plaintiff failed to show that the vague requests meet the alleged standard of care. In the alterative, defendants request a hearing to fully address and put on evidence as to each request.

Respectfully submitted,

**JEFF LANDRY**
**Attorney General**

By:_____s/Andrew Blanchfield_____
   Andrew Blanchfield, T.A. (#16812)
   Email: ablanchfield@keoghcox.com
   Chelsea A. Payne (#35952)
   Email: cpayne@keoghcox.com
   Special Assistant Attorneys General
   701 Main Street (70802)
   Post Office Box 1151
   Baton Rouge, Louisiana  70821
   Telephone:  (225) 383-3796
   Facsimile:  (225) 343-9612

# CERTIFICATE OF SERVICE

   I HEREBY CERTIFY that I have this date electronically filed the foregoing with the Clerk of Court by utilizing the CM/ECF system, and a copy of the above and foregoing was this day forwarded by the Court's ECF Delivery System to all counsel of record and by United States Mail to the pro se plaintiff.

   Baton Rouge, Louisiana, this 31st day of October, 2019.

     s/Andrew Blanchfield_____
     Andrew Blanchfield