**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**ROBERT CLARK (#611786)** **CIVIL ACTION**

**VERSUS**

**19-512-BAJ-SDJ**

**JAMES LEBLANC, ET AL.**

**NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on July 20, 2020.

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**ROBERT CLARK (#611786)** **CIVIL ACTION**

**VERSUS**

**19-512-BAJ-SDJ**

**JAMES LEBLANC, ET AL.**

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter comes before the Court on Motion to Dismiss filed on behalf of defendants James LeBlanc, Darrel Vannoy, Joseph Lamartiniere, Kristen Thomas, Sherryl Coodie, Tracy Falgoust, Dr. Randy Lavespere, Dr. Matthew Gamble, Bradley Lacomb, and Col. Rheams (R. Doc. 27). The Motion is opposed. *See* R. Doc. 28.

The *pro se* plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983 against the aforementioned defendants and defendants Major Jones, Lt. Col. Russo, Cynthia Park, EMT Jane Doe, Jane Doe 1, Antonio Whittaker, Jeff Travis, Social Worker Tracey, Nurse L. Ducote, and John Doe, complaining that her constitutional rights were violated due to deliberate indifference to her serious medical needs.[1] She prays for monetary, declaratory, and injunctive relief.

The defendants assert, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that the plaintiff has failed to state a claim upon which relief may be granted. In *Bell Atlantic*

---

[1] As to defendants Jones, Russo, Jane Doe, Jane Doe 1, Whittaker, Travis, Tracey, and John Doe, a review of the record reveals that these defendants have not been served because service was not accepted by the Department of Corrections. *See* R. Doc. 25. Pursuant to the requirements of Rule 4(m) of the Federal Rules of Civil Procedure, failure to serve a defendant within 90 days of commencement of an action is cause for dismissal of that defendant from the proceeding. Although a *pro se* plaintiff may rely on service by the U.S. Marshal, she may not remain silent and do nothing to effectuate such service and should attempt to remedy any defects of which she has knowledge. The plaintiff was informed of the lack of service and has failed to take action to direct service on these defendants. *See* R. Doc. 25. It is appropriate, therefore, that the plaintiff's claims asserted against defendants Jones, Russo, Jane Doe, Jane Doe 1, Whittaker, Travis, Tracey, and John Doe be dismissed, without prejudice, for failure of the plaintiff to effect timely service upon them. With regards to defendant Park, it appears that this defendant was served on November 26, 2019, and has failed to make an appearance herein. *See* R. Doc. 25.

*Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, *supra*, at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, *supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id*. (citation omitted). Notwithstanding this approach, the court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (internal quotation marks omitted).

In her Complaint as amended, the plaintiff alleges that during initial screening when she first arrived at LSP in February 2014, she informed prison officials that she required medical attention for gender dysphoria. However, prison officials have not allowed the plaintiff to express a feminine persona. The plaintiff alleges that she has been verbally harassed and told by security officer that she is a man and will be treated as such. The plaintiff complains that she has been subjected to verbal abuse, threats and sexual harassment by both security officers and inmates. Although the plaintiff has been prescribed sleeping medication, she has nonetheless made suicide attempts in December 2015, January 2017, and May of 2019 as well as castration. Further, although the plaintiff has consulted on numerous occasions with the LSP Mental Health Director, Dr. Gamble, and other mental health care workers at LSP, she continues to struggle mentally with her appearance as a male.

The plaintiff further complains that she has been generally denied bodily privacy and, during a 2-week period in August 2016, was observed on camera in her dormitory shower area and was ultimately issued a disciplinary charge for having "consensual" sex in the shower with a co-inmate. The plaintiff also asserts that she was subjected to an attempted rape on one occasion in November 2016 that was not properly investigated and that resulted in another disciplinary charge issued against the plaintiff.

The plaintiff seeks to be provided with hormone replacement therapy and electrolysis, to be allowed to dress as a woman and purchase cosmetics and feminine underclothing, and to be examined by a qualified specialist. The defendants have failed to provide the plaintiff with care beyond counseling for gender dysphoria despite the implementation of a policy in October of 2017 specifically pertaining to inmates with gender dysphoria.

First, with regards to the plaintiff's claims asserted against the moving defendants in their official capacities, § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). In addition, in *Hafer v. Melo*, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. *Id*. at 25. Accordingly, the plaintiff's § 1983 claims asserted against the defendants in their official capacities for monetary damages are subject to dismissal. In contrast, the plaintiff's § 1983 claims for monetary damages asserted against these defendants in their individual capacities remain viable because a claim against a state official in an individual capacity, seeking to impose personal liability for actions taken under color of state law, is not treated as a suit against the state. *Id*. at 29. The plaintiff's claims for declaratory and injunctive relief also remain viable.

Defendants next assert that that are entitled to qualified immunity in connection with the plaintiff's claims. The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 F. App'x. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific

context of the case, not as a broad, general proposition. *Id*. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id*.

Undertaking the qualified immunity analysis, the Court finds that the defendants' motion should be granted in part, and denied in part. Specifically, the Court concludes that the plaintiff has stated claims upon which relief can be granted against defendants Dr. Lavespere, Dr. Gamble, Lacomb, and Rheams.

In order for there to be liability in connection with a claim of deliberate medical indifference, an inmate plaintiff must allege that appropriate medical care has been denied and that the denial has constituted "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir.1985). Whether the plaintiff has received the treatment or accommodation that he believes he should have is not the issue. *Estelle v. Gamble, supra*. Nor do negligence, neglect, unsuccessful treatment, or even medical malpractice, give rise to a § 1983 cause of action. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991). Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 839–30 (1994). As stated in *Farmer*, to be liable on a claim of deliberate indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. The deliberate indifference standard sets a very high bar: the plaintiff must be able to establish that the defendants "refused to treat her, ignored her complaints, intentionally treated her incorrectly, or engaged in any similar conduct that would clearly evince

a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001), *quoting Estelle v. Gamble*, *supra*. Further, a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir.1993).

In order for a prison official to be found liable under § 1983, the official must have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). Any allegation that the defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 F. App'x. 715, 716–17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability"). Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must allege that the deprivation of her constitutional rights occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law. *Lozano v. Smith*, *supra*, 718 F.2d at 768.

With regards to defendants Dr. Gamble and Dr. Lavespere, the plaintiff's Complaint, as amended, states a claim for deliberate indifference to her serious medical needs. The plaintiff alleges that due to gender dysphoria she has attempted suicide on multiple occasions, has

attempted to castration, and suffers from anxiety and depression. Despite the foregoing, the plaintiff has received only occasional visits with Dr. Gamble who prescribed sleeping medications, while reiterating security's stance on the plaintiff presenting herself as a female. Further, Dr. Gamble only formally diagnosed the plaintiff with gender dysphoria following a consultation with a priest after failing for some time to diagnose the plaintiff for religious reasons. Dr. Gamble failed to prescribe additional treatment for the plaintiff because, according to him, it would open the flood gates for additional inmates to request similar treatment due to a lack of a policy pertaining to such treatments.

Dr. Gamble did refer the plaintiff to defendant Dr. Lavespere as a candidate for hormone therapy. However, in January of 2017, the plaintiff was told by Dr. Gamble that during a conference with Dr. Lavespere and others it was decided that no additional treatment would be provided to the plaintiff absent a court order. In October of 2017, the Department of Corrections created a policy pertaining to inmates with gender dysphoria, but it was not implemented. Despite the attempted castration, the plaintiff was told via a grievance response that no further treatment would be provided to her for gender dysphoria. Although Secretary LeBlanc remanded the grievance back to the prison citing inadequate treatment, the plaintiff has still received no further treatment, partially or completely, due to objections by security.

Gender dysphoria is a medical condition; however, based on the plaintiff's allegations it does not appear that defendants Dr. Gamble and Dr. Lavespere failed to provide her with additional treatment as a matter of medical judgment. Rather it appears that Dr. Gamble and Dr. Lavespere denied the plaintiff additional treatment for religious reasons and at the request of security. The plaintiff's prescribed treatment has not relieved the ongoing gender dysphoria and the plaintiff has been offered no additional treatment indicating deliberate indifference to the

plaintiff's medical needs. *See Gibson v. Collier*, 920 F. 3d 212 (5th Cir. 2019) (finding no deliberate indifference to the plaintiff's medical needs where the plaintiff was treated with means, accepted within the medical community, other than sex reassignment surgery, including counseling and hormone therapy); and *Williams v. Kelly*, 2018 WL 4386178, (E.D. La. Sept. 14, 2018) (finding no deliberate indifference to the plaintiff's medical needs where the plaintiff was diagnosed with gender dysphoria by Dr. Gamble in 2016 and began feminizing hormone therapy at Rayburn Correctional Center in June of 2017).

With regards to the plaintiff's allegations against defendants Lamartiniere, Falgout, Coodie, Thomas, Vannoy and LeBlanc, the plaintiff has failed to allege sufficient personal involvement on the part of these defendants. The plaintiff has made no allegations of personal involvement on the part of aforementioned defendants with regards to her medical care. Accordingly, the plaintiff's deliberate indifference claims against defendants Lamartiniere, Falgout, Coodie, Thomas, Vannoy, and LeBlanc should be dismissed.

To the extent the plaintiff complains that defendants Lamartiniere, Falgout, Coodie, Thomas, Vannoy, and LeBlanc failed to adequately respond to her grievances and informal complaints, such allegations fail to state a claim upon which relief may be granted as the plaintiff is not constitutionally entitled to an investigation into her administrative claims or informal complaints, or to a fair or favorable response thereto. *See Mahogany v. Miller*, 252 Fed. Appx. 593 (5th Cir. 2007). *See also Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) (holding that an inmate "does not have a federally protected liberty interest" in having her administrative claims resolved to her satisfaction and that a claim "arising from the alleged failure to investigate her grievances is indisputably meritless").

With regards to defendants Lacomb and Rheams, the plaintiff alleges that on August 15, 2016, she was placed in administrative segregation by defendant Lacomb who observed the plaintiff, via a video monitoring system, having sex with another inmate. For non-security related purposes, the video was watched by defendants Lacomb and Rheams and others, which led to the plaintiff being mocked by security and other inmates. The plaintiff filed a grievance regarding voyeurism and was notified of its acceptance on September 2, 2016. On September 15, 2016, the plaintiff was awakened around 1:00 a.m. by defendant Rheams who threatened to "f*ck over" the plaintiff if she did not withdraw her grievance. The plaintiff signed the withdrawal form provided to her and was warned by defendant Rheams to refrain from filing further grievances against him. Defendant Rheams returned the following night to obtain a thumbprint on the form and again threatened the plaintiff.

"Prisoners retain, at best, a very minimal Fourth Amendment interest in privacy after incarceration." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002). Prisoners also retain a "minimal, at best," right to bodily privacy under the Fourteenth Amendment. *Id.* at 745. "But, even if a prison regulation 'impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'" *Garrett v. Thaler*, 560 F. App'x 375, 380 (5th Cir. 2014) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

In the instant matter, the plaintiff is not asserting a general right to privacy argument as to the placement and use of the cameras.[2] Rather, the plaintiff alleges that the images captured by the cameras are being viewed for purposes other than legitimate penological interests.

---

[2] Compare *Gibson v. Thaler*, 560 F. App'x 375 (5th Cit. 2014) (prison's placement of video recording cameras in bathrooms and showers did not violate prisoner's minimal expectation of privacy where plaintiff made no privacy-specific argument beyond his contention that placement of the camera violated his 4th amendment reasonable expectation of privacy.)

Specifically, the plaintiff alleges that the recordings are being used in an abusive manner resulting in the plaintiff being subjected to ridicule and harassment. As such, the plaintiff's allegations are sufficient to state a claim upon which relief may be granted.

To the extent the plaintiff complains of the verbal abuse and/or threats received in response to the filing of her grievance, neither threats nor verbal abuse by a security officer is actionable under § 1983. *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002) ("[C]Iaims of verbal abuse are not actionable under § 1983"); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) ("It is clear that verbal abuse by a prison guard does not give rise to a cause of action under § 1983"); *Bender v. Brumley*, 1 F.3d 271, 274 n. 4 (5th Cir. 1993) ("Mere allegations of verbal abuse do not present actionable claims under § 1983").

Further, even if the verbal threats were sufficient to induce the plaintiff to withdraw her grievance the plaintiff has not alleged that she has suffered prejudice as a result thereof. Accordingly, inasmuch as a showing of cognizable legal detriment or prejudice, greater than *de minimis*, is a prerequisite for a claim of retaliatory interference with access to the courts, *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (holding that an access-to-courts claim requires a showing that an inmate has been "hindered [in] her efforts to pursue a legal claim"), the plaintiff's claim in this regard must likewise be rejected.

Finally, to the extent that the plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this court over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the

instant case, given the Court's recommendations the plaintiff's state law claims would substantially predominate over the claims over which the district court has original jurisdiction, the Court further recommends that the exercise of supplemental jurisdiction be declined.

**RECOMMENDATION**

It is the recommendation of the magistrate judge that that the plaintiff's claims asserted against defendants Jones, Russo, Jane Doe, Jane Doe 1, Whittaker, Travis, Tracey, and John Doe be dismissed, without prejudice, for failure of the plaintiff to effect timely service upon them. It is further recommended that the defendants' Motion to Dismiss (R. Doc. 27) be granted in part, dismissing the plaintiff's claims with prejudice, in their entirety, against defendants Lamartiniere, Falgout, Coodie, Thomas, Vannoy, and LeBlanc, and the plaintiff's claims for monetary damages asserted against all other moving defendants in their official capacities. It is further recommended that the defendants' Motion be granted in part as to defendant Rheams, dismissing with prejudice the plaintiff's claims with regards to verbal threats. It is further recommended that in all other regards the Motion (R. Doc. 27) be denied, that the Court decline the exercise of supplemental jurisdiction in connection with the plaintiff's potential state law claims, and that this matter be referred back to the Magistrate Judge for further proceedings.

Signed in Baton Rouge, Louisiana, on July 20, 2020.

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**