UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ROBERT CLARK                                              CIVIL ACTION

VERSUS

JAMES LEBLANC, ET AL.                            NO. 19-00512-BAJ-SDJ

### RULING AND ORDER

Before the Court is Plaintiff's *pro se* **Request for Emergency Temporary Restraining Order (TRO) (Doc. 59)** and **Request for Emergency TRO Continued (Doc. 65).** Plaintiff seeks a temporary restraining order (TRO) "enjoining Defendants, their successors in office, agents, employees, and all other persons acting in concern [sic] and/or participating with them to provide the Plaintiff with adequate medically needed medical treatments in the form of (a) a follow up visit with endocrinologist; [or] (b) allow Plaintiff to dress and groom as a phenotypic female, until [sic] after a hearing has been held pertaining to this TRO, and then only if this order has been rescinded." (Doc. 59, p. 1). Specifically, Plaintiff requests that the Court order the prison to allow Plaintiff to style her hair in "effeminate styles (braids, plaits, ponytails, perms, relaxers, arched eyebrows and more)." (Doc. 65).

The Court denied Plaintiff's request for a temporary restraining order, yet ordered Defendants to file their response to the request for a preliminary injunction. (Doc. 60). Defendants filed an opposition. (Doc. 62). Plaintiff filed a reply. (Doc. 66).

For the foregoing reasons, Plaintiff's Motions are **DENIED.**

1

## I. BACKGROUND

Plaintiff is a transgender woman incarcerated at Louisiana State Penitentiary ("LSP"). (Doc. 1). On August 7, 2019, Plaintiff filed suit against LSP alleging that Defendants unconstitutionally "deny inmates with gender dysphoria individualized medically appropriate treatment." (Doc. 1, p. 13). Plaintiff has, to date, filed three main motions for a temporary restraining order. *See* (Docs. 10, 40, 61). The Court granted the first motion, finding that, at the time, Plaintiff was "being denied necessary treatment for gender dysphoria that meets the prevailing standards of care." (Doc. 11, p. 5). Specifically, the Court found that LSP offered Plaintiff "no viable option to relieve the ongoing gender dysphoria." (*Id.*). However, Plaintiff's second motion was denied because Defendants demonstrated that, as of May 21, 2020, Plaintiff was receiving the recommended medication and treatment for her gender dysphoria. (Doc. 43, p. 3).

Plaintiff requests that the Court mandate that Defendants provide her with a follow-up visit with an endocrinologist, permit her to "dress and groom as a female", particularly with regard to her hair, and release her to a less restricted custody status. (Doc. 59, p. 1). Defendants argue that Plaintiff has a follow-up visit scheduled with an endocrinologist, thus Plaintiff's request is now moot, and that her other requested relief jeopardizes security at LSP and should be denied. (Doc. 62).

## II. LAW AND ANALYSIS

### A. Standard

Generally, preliminary injunctions and temporary restraining orders are designed to preserve the status quo prior to the Court's consideration of a case on its

2

merits and are not intended as a substitute for relief on the merits of the case. *See Federal Savings and Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1987). "Injunctive relief is an extraordinary and drastic remedy, and should only be granted when the movant has clearly carried the burden of persuasion." *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009) (quoting, *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1974). "The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted." *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987). "Specifically, the movant must show: (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest." *Holland Am. Ins. Co.*, 777 F.2d at 997 (quoting, *Canal Auth. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974)).

### B. Discussion

#### i. Grooming

As the Court noted in its initial ruling granting Plaintiff's motion for a temporary restraining order, injunctions are not designed to circumvent the normal procedures of litigation. (Doc. 35, p. 2). Here, Plaintiff now requests that the Court order LSP to take positive action and allow Plaintiff to dress and present as a woman, a request substantially in line with her underlying complaint. *See* (Doc. 65); (Doc. 1). Unlike Plaintiff's initial motion, which requested that the Court enjoin LSP from

3

cutting Plaintiff's hair, this motion does not "simply maintain[] the *status quo pendente lite.*" *See Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976). Such relief "is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." *Id.*

Dr. Warren M. Frazer, the physician who examined Plaintiff and diagnosed her with gender dysphoria, recommended that she "be allowed to dress and groom as a phenotypic female to the extent that it does not jeprodize [sic] the security policies of the prison." (Doc. 38-1, p. 2). Defendants assert that Plaintiff's requested hairstyles, particularly braids, are in conflict with LSP's security policies. (Doc. 62, p. 4). As of September 2, 2015, the LSP "Offender Grooming" Policy states that "Hair length . . . shall only be regulated in order to comply with necessary and reasonable health (sanitation), safety and security factors. Judgments of what constitutes a health (sanitation), safety or security problem shall be made by the responsible official and justified through explanation of the hazard involved." (Doc. 62-1, p. 1). Defendants note that buns and braids are prohibited at LSP because they interfere with search procedures and therefore constitute a security concern. (Doc. 62, p. 4). Defendants do not address Plaintiff's counterargument that these styles do not present security concerns at women's facilities.

Plaintiff argues that Defendants "have manufactured security concerns" to prevent her from receiving gender-affirming treatment. (Doc. 65, p. 3). However, Courts have found, particularly in the religious context, that grooming policies in prisons that limit the length and styling of incarcerated individuals' hair due to

4

security concerns are permissible. *See, e.g. Longoria v. Dretke*, 507 F.3d 898 (5th Cir. 2007) (prison grooming policy requiring short hair did not violate Religious Land Use and Institutionalized Persons Act); *But see Ware v. Louisiana Dept. of Corrs.*, 866 F.3d 263 (5th Cir. 2017) (grooming policy prohibiting prisoners from having dreadlocks violated the Religious Land Use and Institutionalized Persons Act).

Similarly, Plaintiff argues that "Defendants ha[ve] failed to show or explain why natural born females are allowed long hair and hair styles no matter how violent their history is but Plaintiff and other transgender prisoners are not." The Fifth Circuit has long held that a difference in the application of hair length policies between prisoners in separate facilities is not an equal protection violation. *Hill v. Estelle*, 537 F.2d 214 (5th Cir. 1976). Plaintiff has not demonstrated that other inmates at LSP are permitted to wear their hair long, outside of those who receive religious accommodations.

Given the security concerns alleged, Plaintiff has not demonstrated a substantial likelihood that she will prevail on the merits of her claim. Similarly, Plaintiff has not demonstrated that she will suffer irreparable injury if the injunction is not granted. Plaintiff is currently receiving hormone treatment, as will be discussed, and is permitted to wear her hair longer than would otherwise be permitted as LSP is enjoined from cutting it unless she requests it. As such, her request for a preliminary injunction is denied as to these claims.

### ii. Endocrinologist

The Eighth Amendment forbids cruel and unusual punishments. The Supreme Court has construed this prohibition to include "deliberate indifference to serious

medical needs of prisoners." *Gibson v. Collier*, 920 F.3d 212, 219 (5th Cir. 2019) (citing *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 285). To establish deliberate indifference, Plaintiff must (1) demonstrate a serious medical need and (2) show that Defendants acted with deliberate indifference to that medical need. *Id.* (citations omitted). Deliberate indifference cannot be established by showing mere negligence or inadvertence. *Id.*

There does not appear to be a dispute as to whether Plaintiff has established a serious medical need. She has done so.[1] Rather, Plaintiff argues that Defendants have failed to adequately address her medical needs and have thus acted with deliberate indifference to such needs. In support, Plaintiff alleges that her treatment for gender dysphoria has been put on hold "for over a year." (Doc. 65, p. 7). However, Defendants note that, due to restrictions stemming from the COVID-19 crisis, many non-emergency appointments were put on hold. (Doc. 62, p. 4). As restrictions have now been lifted, Plaintiff's treatments have resumed. Indeed, Plaintiff had an appointment with Dr. Frazer on March 22, 2021. As such, Plaintiff has not demonstrated that irreparable harm will result if her Motion is denied because this concern is moot.

---

[1] The Court notes that on April 22, 2021, the United States Department of Justice filed a Statement of Interest in the case of *Diamond v. Ward*, 5:20-cv-00453-MTT (Doc. 65). There, the Department argued that "[p]rison officials are [] deliberately indifferent to transgender prisoners' gender dysphoria when they categorically deny certain types of treatment without consideration of individualized assessments conducted by qualified medical professionals and widely-accepted standards of care that indicate such treatments are medically necessary." (Doc. 65, p. 16).

### iii. Custody Status

Defendants note that Plaintiff is housed in restrictive custody because she attacked a cellmate in 2018 with a padlock. (Doc. 62). The cell mate died from his injuries, and Plaintiff was charged with second degree murder. (*Id.*). While Plaintiff disputes the characterization of the situation, she does not dispute the fact that she is in restrictive custody due to this incident. (Doc. 65, p. 1). Plaintiff has not demonstrated that the public interest favors any modification of her custody status, and therefore her motion is denied with respect to this claim.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's requests for a temporary restraining order and preliminary injunction (Docs. 59, 61, 65) are **DENIED**.

**IT IS FURTHER ORDERED** that this matter is **REFERRED** to the Magistrate Judge for further proceedings.

Baton Rouge, Louisiana, this 25th day of May, 2021

JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA