UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ROBERT CLARK** | * | **CIVIL ACTION** |
| | * | |
| | * | **NO.: 3:19-cv-00512-BAJ-SDJ** |
| | * | |
| **VERSUS** | * | **JUDGE BRIAN A. JACKSON** |
| | * | |
| | * | **MAGISTRATE JUDGE** |
| **JAMES LEBLANC, ET AL.** | * | **SCOTT D. JOHNSON** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

NOW INTO COURT, through undersigned counsel, come defendants, Warden Vannoy, Dr. Randy Lavespere, Dr. Matthew Gamble, Bradley Lacomb and Luke Rheames ("Defendants"), who file this memorandum in support of their motion for summary judgment.

### I.   FACTUAL BACKGROUND

**A. Procedural Background**

In February 2017, plaintiff filed a prior suit in this Court, Civil Action No. 17-0111. On March 29, 2018, this Court dismissed plaintiff's claims without prejudice for failure to exhaust administrative remedies. *Clark v. LeBlanc*, No. CV 17-00111-BAJ-EWD, 2018 WL 1547349, at *1 (M.D. La. Mar. 29, 2018). This court also noted: "it does not appear that Defendants have been deliberately indifferent to Plaintiff's complaints." *Clark v. LeBlanc*, No. CV 17-0111-BAJ-EWD, 2018 WL 1547860, at *5 (M.D. La. Mar. 13, 2018), report and recommendation adopted, No. CV 17-00111-BAJ-EWD, 2018 WL 1547349 (M.D. La. Mar. 29, 2018)

On August 7, 2019, plaintiff filed this instant suit, alleging deliberate indifference for treatment of plaintiff's gender dysphoria. R.Doc. 1. On the same day suit was filed, plaintiff filed a temporary restraining order and preliminary injunction. R.Doc. 2. On October 10, 2019, the

1

Court granted the temporary restraining order, ordering that plaintiff's hair shall not be cut during the pendency of the order, and set a hearing for October 22, 2019 regarding whether the TRO should be converted into a preliminary injunction. R.Doc. 11. Through briefing, defendants advised the Court that DOC was in the process of contracting with an endocrinologist to evaluate plaintiff for hormone therapy (even before suit was filed). R.Doc. 22. Defendants notified the Court once the contract was approved and advised that plaintiff had a scheduled appointment with the endocrinologist. R.Doc. 32. The TRO and preliminary injunction was denied. R.Doc. 35.

Plaintiff filed three more TROs/preliminary injunctions, which were denied. R.Doc. 43, 45, 63, 67. Defendants filed a Rule 12 motion, which was granted in part. Plaintiff's remaining claims are as follows: (1) deliberate indifference against Warden Vannoy, Dr. Randy Lavespere, Dr. Matthew Gamble arising from treatment of gender dysphoria; and (2) deliberate indifference against Bradley Lacomb and Luke Rheames arising from an alleged incident in August 2016.

### B. Plaintiff's Medical Treatment

In 2016, Clark was diagnosed with gender dysphoria by Dr. Gamble.[1] Clark's medical records, which are more fully outlined in the attached affidavit of Dr. Lavespere, show that Clark received continuous treatment following this diagnosis.[2] Clark was seen by Dr. Gamble regularly. Clark's Mental Health Plan of Care specifically identified depression due to gender dysphoria.[3] The plan of care was medication management with individuals and/or group sessions.[4] As evidenced by the attached medical records, this plan of care was followed.

DOC Health Care Policy No. 47, which was revised in March 2019, governs treatment for inmates diagnosed with gender dysphoria, and provides that a treatment plan will be formulated to

---

[1] Exhibit 1, Dr. Lavespere's Affidavit; Exhibit 1-A, medical records, p.1.
[2] Exhibit 1, Dr. Lavespere's Affidavit.
[3] Exhibit 1, Dr. Lavespere's Affidavit; Exhibit 1-A, medical records, p.11-12.
[4] *Id.*

meet the standard of care.[5] DOC has a team that assesses each transgender inmate and their treatment plan quarterly. Due to numerous requests for hormone therapy, DOC began to explore options to contract with an outside specialist. Hormone therapy has potential serious side effects, which include stroke, blood clots, brain tumors and cancer.[6] Thus, a qualified specialist is required to determine whether hormone therapy is appropriate.[7]

Even before this suit was filed, DOC began searching for an outside physician to evaluate transgender inmates across all facilities.[8] In July 2019, DOC met with Dr. Warren Fraser, who eventually agreed to evaluate transgender inmates in DOC custody.[9]

Once plaintiff's mental health provider at Angola, Dr. Gamble, recommended plaintiff be evaluated for hormone therapy, LSP began taking steps to provide that treatment.[10] Because no physician at Angola is trained in hormone therapy, bringing Dr. Fraser on as a contract employee was a prerequisite for plaintiff to be evaluated for hormone therapy.[11] As soon as Dr. Fraser's contract was signed in January 2020, LSP facilitated treatment through Dr. Fraser.[12]

Plaintiff has been receiving hormone therapy since May 2020.[13] The medical records show that plaintiff is pleased with the hormone therapy treatment.[14] Plaintiff also receives female hygiene products, including a sports bra.[15]

---

[5] Exhibit 2, Health Care Policy 47.
[6] Exhibit 1, Dr. Lavespere's Affidavit.
[7] Exhibit 1, Dr. Lavespere's Affidavit.
[8] Exhibit 1, Dr. Lavespere's Affidavit.
[9] Exhibit 1, Dr. Lavespere's Affidavit.
[10] Exhibit 1, Dr. Lavespere's Affidavit.
[11] Exhibit 1, Dr. Lavespere's Affidavit.
[12] Exhibit 1, Dr. Lavespere's Affidavit.
[13] Exhibit 1, Dr. Lavespere's Affidavit.
[14] Exhibit 1, Dr. Lavespere's Affidavit; Exhibit 1-A, medical records, p. 48.
[15] Exhibit 1, Dr. Lavespere's Affidavit.

## II. Law and Argument
### A. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Robinson v. Wheeler*, 338 F. App'x 437, 438 (5th Cir. 2009); See also F.R.C.P. 56. A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. Once the moving party has demonstrated the absence of a material fact issue, the non-moving party must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Boudreaux v. Swift Transpo. Co., Inc*., 402 F.3d 536, 540 (5th Cir. 2005). This burden is not satisfied by some metaphysical doubt as to the material fact, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. *Id*.

Applying the summary judgment standard warrants a dismissal of plaintiff's claims. There are no genuine issues of fact that plaintiff's disagreement with medical care does not constitute deliberate indifference. Defendants are entitled to judgment as a matter of law.

### B. Plaintiff's Deliberate Indifference Claims Fail

It is well-settled that to prevail on an Eighth Amendment claim for the deprivation of medical care, a prisoner must be able to show that appropriate care has been denied and that the denial has constituted "deliberate indifference to serious medical needs." *Thomas v. Carter*, 593 Fed. Appx. 338, 342 (5th Cir.2014), citing *Estelle v. Gamble*, 429 U.S. 97 (1976). Whether the plaintiff has received the treatment or accommodation that he believes he should have is not the issue because a prisoner's mere disagreement with his medical treatment, absent exceptional circumstances, does not support a claim of deliberate medical indifference. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir.2006). Nor do negligence, neglect, medical malpractice or unsuccessful

4

medical treatment give rise to a § 1983 cause of action. *Bagneris v. Collins*, No. CV 14-0724, 2016 WL 1122995, at *3 (M.D. La. Mar. 7, 2016), *report and recommendation adopted*, No. CV 14-724-SDD-EWD, 2016 WL 1189336 (M.D. La. Mar. 22, 2016).

Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 83930 (1994). A prison official acts with deliberate indifference only if the official (1) "knows that inmates face a substantial risk of serious bodily harm," and (2) "disregards that risk by failing to take reasonable measures to abate it." *Gobert v. Caldwell*, 463 F.3d at 346, quoting *Farmer v. Brennan*, 511 U.S. at 847.

The deliberate indifference standard sets a very high bar. The plaintiff must be able to establish that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001), quoting *Estelle v. Gamble*, supra. Further, a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir.2006), citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir.1993). Further, the Fifth Circuit has held that 'deliberate indifference is especially hard to show when the inmate was provided with ongoing medical treatment.' " *Henderson v. Tanner*, No. CV 15-804-SDD-EWD, 2019 WL 885914, at *5 (M.D. La. Feb. 22, 2019), quoting *Fails v. DeShields*, 349 F. App'x 973, 976 (5th Cir. 2009).

Here, as previously recognized by this Court, "there currently is no controlling precedent in the Fifth Circuit as to whether refusing hormone therapy to a person, diagnosed with gender dysphoria, violates the Eighth Amendment prohibition against cruel and unusual punishment."

5

*Clark v. LeBlanc*, No. CV 17-0111-BAJ-EWD, 2018 WL 1547860, at *5 (M.D. La. Mar. 13, 2018), report and recommendation adopted, No. CV 17-00111-BAJ-EWD, 2018 WL 1547349 (M.D. La. Mar. 29, 2018). Courts have generally held that the failure to provide hormone therapy does not constitute deliberate indifference. See *Praylor v. TDCJ*, 430 F.3d 1208, 1209 (5th Cir. 2005) (assuming without deciding that transsexualism presents a serious medical need but holding, on the record before it, that "the refusal to provide hormone therapy did not constitute the requisite deliberate indifference"); *Young v. Adams*, supra (dismissing an inmate-plaintiff's request for hormone therapy for failure to state a claim upon which relief may be granted); *Young v. University of Texas Medical Branch Correctional Health Care,* 2012 WL 262983 (E.D. Tex. Jan. 11, 2012); *Sears v. Newcomer*, 2012 WL 3198580 (W.D. La. June 29, 2012) (dismissing an inmate-plaintiff's request for a transfer to a facility that could provide treatment for transsexualism); S*cribner v. Surapaneni*, 2006 WL 3761976 (E.D. Tex. Dec. 21, 2006) (dismissing an inmate-plaintiff's request for hormone therapy on motion for summary judgment).

Here, the evidence shows that plaintiff was continuously treated for gender dysphoria. Plaintiff was treated by Dr. Gamble who prescribed medications to treat depression and counseling sessions. In 2019, before suit was filed, DOC began searching for an endocrinologist to treat transgender inmates. In July 2019, DOC met with Dr. Warren Fraser, who eventually agreed to evaluate transgender inmates in DOC custody. The contract was finalized in January 2020, and plaintiff was seen in February 2020. Since May 2020, plaintiff has undergone hormone therapy, has been issued female canteen products, to include a bra, has been evaluated by the Transgender Team, which includes the individualized plan of treatment.[16]

---

[16] Exhibit 1, Affidavit of Dr. Lavespere.

The evidence shows that medical treatment has in fact been provided. As such, plaintiff's real claim is a disagreement with the medical treatment provided, which is not deliberate indifference. Where, as here, an inmate has in fact received medical treatment, federal constitutional protections are not violated just because that treatment was unsuccessful or because pain persisted despite the treatment. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006); *Williams v. Chief of Medical Operations, Tarrant County Jail*, No. 94-10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994). Further, the decision whether to provide additional treatment is "a classic example of a matter for medical judgment." *Estelle v. Gamble*, 429 U.S. 97, 107, 97 S. Ct. 285, 293, 50 L. Ed. 2d 251 (1976).

Beginning in 2016, Dr. Gamble treated plaintiff with counseling and depression medications. Federal courts have held that this treatment does not violate constitutional rights. Once Dr. Gamble requested that plaintiff be evaluated for hormone therapy, LSP began working to provide that treatment. As soon as DOC had a contract with a qualified physician to evaluate for such treatment, plaintiff received that treatment.

Under the Eighth Amendment, plaintiff must show that appropriate medical care was denied and that the denial constituted "deliberate indifference to serious medical needs." Plaintiff's allegations fall short of this threshold requirement. See also, *Dawson v. Corr. Corp. of Am.*, No. 15-CV-643, 2015 WL 4092782, at *2 (W.D. La. July 6, 2015)(the court held that because plaintiff indicated that he received medical attention, his disagreement with the prescribed treatment did not state a valid claim). Accordingly, plaintiff's claims should be dismissed.

### C. Defendants are Entitled to Qualified Immunity

Plaintiff's claims against defendants in their individual capacities must be dismissed, as defendants are entitled to qualified immunity. Under the doctrine of qualified immunity, government officials acting within their discretionary authority are immune from civil liability for

7

damages if their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. *Flores v. City of Palacios*, 381 F.3d 391, 393-394 (5th Cir. 1984). The qualified immunity defense affords government officials not just immunity from liability, but immunity from suit. *Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir. 1996) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 525-26 (1985)). Qualified immunity allows officials the freedom to exercise fair judgment, protecting "all but plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Actions and decisions made by officials that are merely inept, erroneous, ineffective or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity. *Alton v. Texas A&M University*, 168 F.3d 196, 201 (5th Cir. 1999). The defense of qualified immunity must be resolved at the earliest possible stage of litigation since it entails an immunity from suit and entitlement not to stand trial or face other burdens of litigation. *Pearson v. Callahan* 555, U.S. 223, 232 (2009).

The qualified immunity defense has two prongs: (1) whether an official's conduct violated a constitutional right of the plaintiff; and (2) whether the right was clearly established at the time of the violation. *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir.2009). A court may rely on either prong of the defense in its analysis. *Id.* If the defendant's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is still appropriate because the defendant's actions were "objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir.2004) (citations omitted). To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir.2008). In essence, a plaintiff must allege

8

facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper. *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir.1994).

Although a plaintiff need not find "a case directly on point, ... existing precedent must have placed the ... constitutional question beyond debate." *Ashcroft v. al-Kidd,* 563 U.S. 731, 741. That is, existing precedent must have replaced beyond debate the unconstitutionality of the officials' actions, as those actions unfolded in the specific context of the case at hand. *Taylor*, 135 S.Ct. at 2044. Accordingly, the Supreme Court explained, "If judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy." *Wilson v. Layne*, 526 U.S. 603, 618, 119 S. Ct. 1692, 1701.

Given the foregoing doctrine, the question in this case must be: viewing the evidence in the light most favorable to plaintiff, at the time the defendants acted, was it "beyond debate" that their conduct violated the Constitution? If the answer is no– if the officials' actions did not clearly violate Clark's rights under the Eighth Amendment– then the officials are entitled to qualified immunity, and summary judgment must be entered in their favor. See *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016).

As established above, defendants did not violate any constitutional rights. Plaintiff's disagreement with medical care is not tantamount to deliberate indifference under the Eighth Amendment. Numerous courts have held that the failure to provide hormone therapy does not state a claim for deliberate indifference.[17] Further, this very Court previously noted, in a qualified

---

[17] See *Praylor v. TDCJ*, 430 F.3d 1208, 1209 (5th Cir. 2005) (assuming without deciding that transsexualism presents a serious medical need but holding, on the record before it, that "the refusal to provide hormone therapy did not constitute the requisite deliberate indifference"); *Young v. Adams*, supra (dismissing an inmate-plaintiff's request for hormone therapy for failure to state a claim upon which relief may be granted); *Young v. University of Texas Medical Branch Correctional Health Care,* 2012 WL 262983 (E.D. Tex. Jan. 11, 2012); *Sears v. Newcomer*, 2012 WL 3198580 (W.D. La. June 29, 2012) (dismissing an inmate-plaintiff's request for a transfer to a facility that could provide treatment for

immunity analysis, that "it does not appear that Plaintiff's rights are sufficiently clearly established to support a finding of liability." *Clark v. LeBlanc,* No. CV 17-0111-BAJ-EWD, 2018 WL 1547860, at *5 (M.D. La. Mar. 13, 2018), report and recommendation adopted, No. CV 17-00111-BAJ-EWD, 2018 WL 1547349 (M.D. La. Mar. 29, 2018). To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir.2008). Given this Court's prior review of Clark's treatment for gender dysphoria, it cannot be said that defendants would reasonably understand that the treatment violated Clark's rights.

Thus, as stated by the Supreme Court, "it is unfair to subject [officials] to monetary damages for picking the losing side of the controversy." *Wilson v. Layne*, 526 U.S. 603, 618, 119 S. Ct. 1692, 1701. Given the Fifth Circuit jurisprudence, and this Court's prior ruling, defendants are entitled to qualified immunity and plaintiffs' claims for damages should be dismissed.

### D. Claims against Defendants Lacombe and Rheames

Plaintiff brings claims against Defendants Lacombe and Rheames regarding an alleged incident in August 2016. Plaintiff brought these same allegations in the prior suit, which were dismissed for failure to exhaust administrative remedies. However, plaintiff never filed an ARP as to these allegations after dismissal of the prior suit. As such, plaintiff failed to exhaust administrative remedies. In addition, any claim arising in 2016 in now prescribed.

### i.    Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law,

---

transsexualism); S*cribner v. Surapaneni*, 2006 WL 3761976 (E.D. Tex. Dec. 21, 2006) (dismissing an inmate-plaintiff's request for hormone therapy on motion for summary judgment).

by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In cases covered by the PLRA, exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

"The PLRA's exhaustion requirement apples to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id*. at 532, 122 S.Ct. 983. A prisoner must exhaust administrative remedies by complying with applicable prison grievance procedures before filing a suit relative to prison conditions. *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004). Not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

In *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006), the Supreme Court explained that "proper exhaustion" under the PLRA requires the prisoner to "compl[y] with the system's critical procedural rules." Id. at 90, 126 S.Ct. 2378. The Supreme Court reasoned that a "prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction" and therefore "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance." *Id*. at 95, 126 S.Ct. 2378.

The Fifth Circuit has held that the definition of "exhaust" is " 'to take complete advantage of (legal remedies).' " *Underwood v. Wilson*, 151 F.3d 292, 295 (5th Cir.1998). Complying with the first step of an administrative grievance procedure will not suffice to exhaust administrative remedies if the grievance procedure contemplates additional steps. *Hemphill v. Inglese*, 359 F. App'x 537, 540 (5th Cir. 2010).

The Administrative Remedy Procedures state that exhaustion of administrative remedies occurs: (a) when the relief requested has been granted; (b) when the second step response has been issued; or (c) when the grievance has been screened and rejected for one of the reasons specified in Subsection I, Grievance Screening. La. Admin. Code tit. 22, pt. I § 325.

In ruling on this very same issue, this Court previously held:

> In the instant case, accepting Plaintiff's assertions as true, Plaintiff submitted two administrative grievances to prison officials, one on August 21, 2016 (which was re-submitted on September 27, 2016) complaining of being observed in the dormitory showers for a 15-day period, and one on August 23, 2016, complaining that Plaintiff was not receiving appropriate medical attention for gender dysphoria. Although Plaintiff complains that Plaintiff was coerced into initially withdrawing the first grievance upon threat of bodily harm, Plaintiff asserts that Plaintiff resubmitted same after being advised to do so. As to neither grievance, however, did Plaintiff proceed unilaterally to the second step of the administrative process by appealing the grievance to the office of the Secretary of the Department after the passage of the applicable time period for a response at the First Step. Thus, neither grievance was administratively exhausted, specifically because "a prisoner must pursue a grievance through both steps for it to be considered exhausted." See Johnson v. Johnson, supra, 385 F.3d at 515, citing Wright v. Hollingsworth, 260 F.3d 358, 358 (5th Cir. 2001). Whereas Plaintiff may wish for the Court to interpret Plaintiff's correspondence of October 11, 2016 to be an "appeal" of the two prior grievances to the Secretary, the Court is unwilling to accept such an interpretation. The referenced correspondence makes no suggestion that it is an attempt to appeal the prior grievances and, instead, appears to have as its principal purpose the transmission of copies of the two new grievances to the Secretary's office, including a request that Plaintiff not be retaliated against therefor. Accordingly, the Court concludes that this proceeding is subject to dismissal for failure to exhaust available administrative remedies.

*Clark v. LeBlanc*, No. CV 17-0111-BAJ-EWD, 2018 WL 1547860, at *3 (M.D. La. Mar. 13, 2018), report and recommendation adopted, No. CV 17-00111-BAJ-EWD, 2018 WL 1547349 (M.D. La. Mar. 29, 2018).

After these claims were dismissed for failure to exhaust administrative remedies, plaintiff failed to submit a new ARP or proceed to the second step of the grievance she claimed she submitted. In the complaint, plaintiff lists the ARPs raising the claims in the complaint: 2016-2396; 2019-0462; and 2018-2345. See R.Doc. 1. ARP 2016-2396 is the same ARP that was withdrawn by plaintiff.[18] Neither the 2019-0462 nor the 2018-2345 contain allegations regarding the 2016 incident included in this lawsuit. See. R.Doc. 3-9. As such, for the same reasons previously provided by this Court, the claims against Rheames and Lacombe should be dismissed for failure to exhaust administrative remedies.

    **ii.**    **In the Alternative, the Claims are Prescribed**

Because there is no federal statute of limitations for claims brought pursuant to 42 U.S.C. § 1983 or the ADA, a federal court must borrow the forum state's general personal injury limitations period for such claims. *Owens v. Okure*, 488 U.S. 235, 240 (1989); *Brockman v. Texas Dep't of Criminal Justice*, 397 F. App'x 18, 21 (5th Cir. 2010). In Louisiana, the applicable period of limitations is one year. La. Civ.Code Art. 3492. Further, in the § 1983 context, the Fifth Circuit has held that even if state law provides the underlying limitations period, federal law establishes the date upon which claims accrue, which is " 'when the plaintiff knows or has reason to know of the injury which is the basis of the action.' " *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir.1992); *Brockman v. Texas Dep't of Criminal Justice*, 397 F. App'x 18, 22 (5th Cir. 2010). A plaintiff need not realize that a legal cause of action exists but must only have knowledge of the facts that support a claim. *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995).

Here, the alleged incident occurred in August 2016. While prescription may have been tolled while plaintiff's first suit was pending, more than a year passed since dismissal of plaintiff's

---

[18] See Exhibit 3.

first lawsuit on March 29, 2018, and the filing of this lawsuit on August 7, 2019. As such, these claims are prescribed.

### III.    Conclusion

Plaintiff's § 1983 claims fail, because the medical records evidence that treatment for gender dysphoria was constitutionally appropriate. Plaintiff's gender dysphoria was treated with counseling and medications until 2020. Once Dr. Gamble recommended evaluation for hormone therapy, and DOC was able to contract with an endocrinologist, plaintiff was evaluated for such treatment. Plaintiff has been receiving hormone therapy since May 2020 and also had access to female canteen items. Deliberate indifference cannot be established where plaintiff was continuously treated.

Further, plaintiff failed to exhaust administrative remedies with respect to the claims against Rheames and Lacombe. In addition, those claims, arising from an alleged incident in 2016, are prescribed.

Defendants pray that this motion for summary judgment be granted, dismissing plaintiff's claims with prejudice.

**JEFF LANDRY**
**Attorney General**

By:    s/Andrew Blanchfield
        Andrew Blanchfield, T.A. (#16812)
        Email: ablanchfield@keoghcox.com
        Chelsea A. Payne (#35952)
        Email: cpayne@keoghcox.com
        Special Assistant Attorneys General
        701 Main Street (70802)
        Post Office Box 1151
        Baton Rouge, Louisiana  70821
        Telephone:  (225) 383-3796
        Facsimile:  (225) 343-9612

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this date electronically filed the foregoing with the Clerk of Court by utilizing the CM/ECF system, and a copy of the above and foregoing was this day forwarded by the Court's ECF Delivery System to all counsel of record and by United States Mail to the pro se plaintiff.

Baton Rouge, Louisiana, this 9th day of May, 2022.

s/Andrew Blanchfield
Andrew Blanchfield