UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ROBERT CLARK (#611786)                                CIVIL ACTION

VERSUS

JAMES LEBLANC, ET AL.                                 NO. 19-00512-BAJ-RLB

RULING AND ORDER

As set forth in this Court's prior Orders, Plaintiff is an inmate currently incarcerated at the Louisiana State Penitentiary (LSP). Plaintiff is "a transgender woman [diagnosed] with gender dysphoria." (Doc. 7 at p. 6).

Writ large, Plaintiff's action challenges two aspects of the conditions of her confinement at LSP: first, whether she has been provided constitutionally-adequate medical treatment for gender dysphoria; and, second, whether her constitutional privacy interests have been violated by certain Defendants' use of video-imagery of Plaintiff captured by surveillance-cameras in inmate-showering areas.

Now before the Court is Plaintiff's *pro se* **Motion for Appointment of Counsel, Motion to Compel, and Requests for Temporary Restraining Order and Emergency Temporary Restraining Order (sic) (Doc. 78)**. For reasons set forth below, Plaintiff's Motion will be denied in all respects.

I.     TEMPORARY RESTRAINING ORDER

Plaintiff's Motion seeks a temporary restraining order (TRO) granting two forms of immediate injunctive relief: (1) "stopping LSP staff from destroying video-footage" of an alleged incident that occurred September 23, 2021, wherein "Defendant

1

Luke Rheams did open the bathroom door and watch the Plaintiff use the restroom in violation of LSP [Policy]"; and (2) compelling Defendants to provide Plaintiff "adequate treatment for gender dysphoria [insofar as] Defendant [sic] still refuse to give any treatments the endocrinologist ordered outside of medication." (Doc. 78 at pp. 5, 7).

Significantly, the Court has already addressed Plaintiff's request for a TRO compelling Defendants to provide her "adequate treatment for gender dysphoria."[1] On February 13, 2020 the Court ruled that Plaintiff was not entitled to immediate relief in this regard because a TRO is *not* a substitute for litigation of the merits of her case, and because she "is now being offered viable options to address her claims," including "an appointment with an endocrinologist" to assess her condition and potential treatment options. (Doc. 35 at p. 3). As such, Plaintiff's renewed demand is, in effect, a request for relief from the Court's February 13 Order, pursuant to Federal Rule of Civil Procedure (Rule) 60(b).

Yet, Plaintiff has failed to offer any facts *or* argument justifying such a request. Indeed, she would be hard-pressed to do so, insofar as the record shows that her position has undeniably improved since the Court issued its February 13 Order. Separately, in her opposition to Defendant's Motion for Summary Judgment, Plaintiff concedes that she has received hormone therapy treatments since May 2020, and has been provided limited access to female canteen items. (Doc. 87 at p. 9 ("Plaintiff began

---

[1] Indeed, this will be the *sixth* Order denying Plaintiff's request for a TRO compelling Defendants to provide "adequate treatment for gender dysphoria" (or some variation thereof) during the pendency of this litigation. (*See* Docs. 35, 43, 45, 60, 63). The Court emphasizes, once again, that a TRO is *not* a substitute for litigation of the merits of Plaintiff's claims.

2

receiving hormone treatments in May of 2020. All other treatments recommended by the endocrinologist ... have been denied except a bra.")). As such, the Court will not disturb its ruling denying a TRO as to Plaintiff's request for "adequate treatment for gender dysphoria" at this late date.

Plaintiff also is not entitled to a TRO prohibiting LSP staff from destroying recorded footage of the alleged September 23, 2021 incident involving Defendant Rheams. It is axiomatic that to obtain a TRO, Plaintiff must show at least *some* likelihood of succeeding on the merits of her claim. *See Turner v. Epps*, 460 F. App'x 322, 325 & n.3 (5th Cir. 2012) (citing *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011). It is equally clear that a prisoner must properly raise grievances regarding prison conditions (including complaints concerning guards' behavior) to prison officials *before* pursuing litigation. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004) ("[U]nder the Prison Litigation Reform Act (PLRA), prisoners are required to exhaust administrative remedies before filing suit."). Here, the alleged September 23, 2021 incident occurred *after* Plaintiff filed her Complaint. Thus, necessarily, Plaintiff failed to exhaust her administrative remedies *prior* to filing suit, and she cannot show any likelihood of prevailing on a claim related the same.[2]

## II. APPOINTMENT OF COUNSEL

This Court has previously ruled that Plaintiff is not entitled to Court-appointed counsel. *See* Doc. 48. Thus, again, Plaintiff's renewed request falls in the realm of Rule 60(b). And again, Plaintiff has not offered any facts or argument that

---

[2] To obtain relief related to the September 23 incident, if merited, Plaintiff must file a new complaint *after* exhausting her administrative remedies.

3

would cause the Court to second-guess its original ruling. As such, Plaintiff's request for appointed counsel will again be denied.[3]

## III. DISCOVERY

Finally, Plaintiff requests that Defendants be compelled to produce the following evidence: (1) Plaintiff's "up to date medical records"; (2) Defendants' "criminal records and/or a disciplinary record with complaints that are relevant to the issues at bay"; and (3) "copies of video footage of the camera angles in the shower area at [LSP] and LSP Camp D." (Doc. 78 at pp. 3-4, 6).

### a. Plaintiff's Updated Medical Records

The record reflects that Defendants produced Plaintiff's updated medical records on October 26, 2021, one week after Plaintiff filed her Motion. *See* Doc. 80. Thus, Plaintiff's request to compel production of these documents is moot.

### b. Defendants' Criminal/Disciplinary Records

Plaintiff's original request stated: "It has come to my attention that one or more of the Defendants may have a criminal record, and extensive disciplinary records while employee [sic] at [LSP]. Please refer this information." (Doc. 71 at p. 1). Defendants objected that this request "is overly broad, vague, unduly burdensome, in that the request is not narrowly tailored." (Doc. 73 at p. 1).

Plaintiff's Motion does not seek to limit or otherwise refine her request, but instead doubles down, stating:

> The defendants past and character issues would surely be relevant

---

[3] The Court will reconsider its ruling in this regard pending the outcome of Defendants' Motion for Summary Judgment, as counsel may be beneficial to Plaintiff should this case proceed to trial.

4

information pertinent to the issues in this case. Especially if they have criminal records and/or a disciplinary record with complaints that are relevant to the issues at bay.

(Doc. 78 at p. 3).

The Court agrees that this request is entirely too broad, as written. Certainly, criminal or disciplinary records arising from Defendants' failure to provide medically necessary treatment for gender dysphoria—to the extent such records exist—would be probative to Plaintiff's claim of deliberate indifference to her medical needs. Yet Plaintiff has not specifically aimed her request at such records; rather she has framed her request in the broadest possible terms, potentially covering all manner of criminal and disciplinary records that have no bearing whatsoever on her claims. This Court has consistently rejected such "fishing expeditions." *See Hsieh v. Apache Deepwater, LLC*, No. 19-cv-00408-BAJ-DPC, 2021 WL 3502467, at *4 (M.D. La. Aug. 9, 2021) ("Rule 26(b) has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition."); *accord Tingle v. Hebert*, No. 15-cv-626-JWD-EWD, 2017 WL 2536584, at *6 (M.D. La. June 9, 2017); *Leonard v. Bd. of Sup'rs of Louisiana State Univ. Agr. & Mech. Coll.*, No. 13-cv-565-JJB-SCR, 2014 WL 4675077, at *1 (M.D. La. Sept. 17, 2014). Accordingly, Plaintiff's Motion will be denied in this regard, subject to Plaintiff's right to re-submit a more narrowly-tailored discovery request.

### c. Still Shot Photos Of All Shower Camera Angles

Plaintiff's original request stated: "The Plaintiff also request [sic] still shot photos of all camera angles and footages available for cameras located in [LSP] Camp D, Eagle 1 Dormitory." (Doc. 71 at p. 1). Defendants objected that this request "is

5

overly broad and unduly burdensome and is not relevant to the present proceeding." (Doc. 73 at p. 2). Again, Plaintiff's Motion does not seek to limit or refine her request, but states: "Plaintiff has persistently requested copies of video footage of the camera angles in the shower area at [LSP] and LSP Camp D." (Doc. 78 at p. 4).

The Court agrees, again, that this request is entirely too broad. Additionally, such evidence is not relevant to Plaintiff's claims. As noted in the Magistrate Judge's Report and Recommendation of July 20, 2020 (adopted in relevant part by this Court on August 25, 2020), Plaintiff does *not* allege a general right to privacy claim that would implicate LSP's placement and use of security cameras. (*See* Doc. 49 at p. 10) Rather, Plaintiff complains that video images of *her* captured by the security cameras in August 2016 were viewed for purposes other than legitimate penological interests. (*Id.*). Obviously, the video evidence relevant to this claim is the video footage depicting Plaintiff, which, Defendants admit, has now been "erased." (Doc. 50, at 1).

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's **Motion for Appointment of Counsel, Motion to Compel,** and **Request for Temporary Restraining Order,** and **Emergency Temporary Restraining Order (Doc. 78)** be and is hereby **DENIED.**

Baton Rouge, Louisiana, this 2nd day of September, 2022

JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA